The relief described hereinbelow is SO ORDERED.

Signed October 13, 2010.



_____
Ronald B. King
United States Chief Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| IN RE: | § | |
|---|---|---|
| | § | |
| COLONY LODGING, INC. | § | CASE NO. 10-60909-RBK |
| | § | |
| Debtor. | § | Chapter 11 |
| | § | |
| | § | |

**FINAL ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL**

Pacific Mercantile Bancorp ("PMB") filed its Motion to Prohibit Usage of Cash Collateral (the "Motion") on July 28, 2010 to prohibit Colony Lodging, Inc., debtor-in-possession ("Debtor") from using its cash collateral or, in the alternative, require adequate protection and restrict the Debtor's expenditures to a mutually acceptable budget. An initial emergency hearing was held on August 3, 2010, resulting in an Agreed Order Authorizing Debtor's Use of Cash Collateral for the month of August 2010 [Docket No. 21] (the "First Interim Order"). After a further hearing on August 31, 2010, a second interim Agreed Order Authorizing Debtor's Use of Cash Collateral was entered on September 7, 2010 [Docket No. 77] (as supplemented by the Supplement to Order Authorizing Debtor's Use of Cash Collateral

1

[Docket No. 88], the "Second Interim Order" and collectively, with the First Interim Order, the "Interim Orders").[1] A further hearing has been held on September 29, 2010. Upon review of the Motion and all relevant pleadings filed with this Court, the relief requested therein and the evidence and representations adduced at the hearings, this Court makes the following findings of fact and conclusions of law:

1. To the Debtor's knowledge, no creditors other than PMB, certain taxing authorities, and Propel Financial Services, LLC ("Propel") claim liens on the Debtor's property.

2. The Debtor is unable to pay the reasonable expenses of its ongoing operations without permission for use of collateral and cash collateral in which security interests and liens are claimed by PMB.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(M) and 1334.

4. PMB served notice by United States mail, facsimile, or overnight delivery, prior to this hearing on the United States Trustee, the Debtor, and the Debtor's twenty largest unsecured creditors. Notice of the Motion and opportunity for hearing were adequate and appropriate under the circumstances of this case.

5. The terms and conditions for the Debtor to provide adequate protection to PMB are proposed in good faith.

6. The operating expenses proposed to be paid by the Debtor through the period set forth in and as described in the budget attached hereto (as may be amended from time to time subject to PMB's consent, and together with all prior budgets, the "Budget") are necessary to prevent irreparable injury, loss, or damage to the Debtor's estate.

---

[1] Capitalized terms shall have the meaning ascribed to them in the Interim Orders.

7. The proposed form of this Order submitted by the Debtor complies with the Local Bankruptcy Rules for the United States Bankruptcy Court for the Western District of Texas, except as described in the Motion and the disclosures of counsel at the hearing on the Motion.

8. PMB claims a first priority security interest in certain assets of the Debtor including the Debtor's real property, an apartment complex in College Station, Texas (the "Apartment Complex"), and all rents and revenues generated therefrom as well as revenues, proceeds, and other cash equivalents generated from the operations of the Apartment Complex, whether held by the Debtor or other third parties (the "Collateral"). No admission has been made by the Debtor or PMB, and no determination is made by this Court, as to the validity, priority, amount, allowance, extent, or voidability of PMB's security interest or claims.

9. In its bankruptcy schedules, Debtor acknowledge that as of the Petition Date, Propel held a second in priority lien claim in the Apartment Complex in the amount of $129,999. However, Propel has no interest in cash collateral as its loan documents do not provide for any assignment of rents. No admission has been made by the Debtor and no determination is made by this Court, as to the validity, priority, amount, allowance, extent, or voidability of Propel's security interest or claims.

IT IS HEREBY ORDERED that, unless modified at the hearing set forth in paragraph 13(a) of this Order, or at any hearing on any related motion or pleading that may be filed under Paragraph 8 hereof, the following terms shall apply.

1. <u>Automatic Stay and Use of Cash Collateral</u>.

a. <u>Authorization</u>. Subject to this Order, the Debtor is hereby authorized under 11 U.S.C. § 363(a), (c)(1), and (c)(2) to use the Collateral, including cash collateral, to the extent necessary to fund the Budget attached hereto or as subsequently submitted to PMB at least 10

business days prior to the start of the budgeting period and approved by PMB. Assuming Debtor's timely delivery of a budget, if no written response has been made by PMB within 2 business days prior to the beginning of the budgeting period, PMB will have been deemed to have accepted that month's proposed budget. If a written objection to any line item on the Budget is received by the Debtor, the Debtor may move the Court for an expedited hearing on not less than 2 business days notice and not more than 14 days notice as to the necessity and allowance of the expenditures which are disputed, and the Debtor may expend funds in accordance with the prior month's budget as to the line items that are disputed and may expend funds in accordance with the proposed budget as to those line items that are not disputed. Except as herein provided, the automatic stay of Bankruptcy Code § 362(a) shall continue in effect and until further modified or terminated by the Court.

    b.    <u>Adequate Protection Obligations</u>. The Debtor is hereby authorized and ordered to protect PMB under 11 U.S.C. §§ 361 and 363, as set forth in this Order, for the Debtor's post-petition use and consumption of PMB's "Pre-Petition Collateral" (as defined in Paragraph 6.a. hereof), the continuation of the automatic stay against PMB's collection, sale or realization upon its Pre-Petition Collateral, and for the post-petition diminution in value of PMB's interest in Pre-Petition Collateral (the "Adequate Protection Obligations").

    c.    <u>Prohibited Transactions</u>. The Debtor shall not, except as set forth herein, or except upon notice and opportunity for hearing: (a) enter into transactions for the sale out of the ordinary course of business of any property in which PMB claims a lien; (b) obtain credit under 11 U.S.C. § 364 (c) or (d); or (c) grant any liens or priorities on a parity with or senior to PMB's priorities under Paragraph 6 and 7 hereof; or (d) enter into any settlement of receivables or claims except in the ordinary course of business.

d. <u>Use of Cash</u>. The Debtor is authorized to use the following cash solely in accordance and compliance with the Budget:

    i. All funds held by the Debtor on the Petition Date; and

    ii. All receipts, receivables, and collections received or to be received on or after the Petition Date; provided that the Debtor shall account to PMB for all such receipts as provided herein.

e. <u>Accounting and Information</u>. PMB will continue to have all its rights under the Loan Documents (as defined in Paragraph 5(a) hereof) to inspect and have access to the Debtor, the Debtor's facilities and properties and Pre-Petition Collateral as provided under the Loan Documents.

2. <u>Cash Collections and Deposits</u>.

a. <u>Cash Collateral Accounts</u>. The Debtor has closed all pre-petition deposit accounts and has opened a debtor in possession account with Wells Fargo Bank, N.A. entitled "Colony Lodging, Inc. opt" (the "Cash Collateral Account"). The Debtor shall deposit any additional cash, which constitutes Cash Collateral, whether now held or later received by the Debtor into the Cash Collateral Account. Subject to Paragraph 6 hereof, PMB is granted a replacement lien on the Cash Collateral Account and on any and all other deposit accounts that may be held or operated in the future and all monies deposited therein, which liens shall have the same validity, extent and priority as PMB's prepetition liens in the Pre-Petition Collateral and which liens shall secure the Debtor's Adequate Protection Obligations. All the deposit accounts described in Paragraph 2(a) shall be referred to as the "Accounts."

b. <u>Deposits</u>. If the Debtor receives any cash, checks, wires, direct deposits or other payments, which are collections, income, proceeds, products, rents or profits of PMB's Pre-

Petition Collateral or Post-Petition Collateral (as defined in Paragraph 6(d) hereof), the Debtor shall deposit the same in the Accounts within three banking days after receipt.

3. Continued Operations.

a. Budget. The Debtor is authorized to use cash collateral to fund the expenses incurred after the Petition Date, on the condition all such expenditures and all post-petition expenses which accrued during the Budget period shall be consistent with the Budget or otherwise agreed to by PMB or ordered by the Court. Receipts and expenditures or accruals may not vary more than ten percent (10%) more than any single line items in the Budget (so long as total disbursements and accruals do not exceed, the amounts set forth in the Budget plus 5% variance) without the prior written consent of PMB or prior Court order after notice and opportunity for hearing.

b. Pre-Petition Debt. Except for the adequate protection payments called for herein, nothing herein permits the Debtor to pay indebtedness or transfer property to vendors, contractors, customers, or other persons whose debt may have been incurred pre-petition. All parties reserve all rights and claims with respect to such indebtedness and property. The Debtor shall not, without prior order of the Court upon notice to PMB, enter into any agreement to permit reclamation of goods, or return any inventory to any creditors for application against pre-petition indebtedness (under § 546 of the Bankruptcy Code or otherwise), or consent to any creditor taking any setoff or recoupment against any of its pre-petition indebtedness based upon any such return, pursuant to § 553(b)(1) of the Bankruptcy Code or otherwise.

4. Professional Fees and Administrative Expenses.

a. No Authorization. Nothing in this Order shall (i) excuse any person from complying with the Bankruptcy Code and Bankruptcy Rules, and the Bankruptcy Local Rules of

this Court and the guidelines of the United States Trustee with respect to applications for professional compensation and reimbursement of expenses, or (ii) be deemed to authorize or approve the receipt or payment of any retainer, advance fee, or compensation to any other professional employed by the Debtor. The Debtor shall not pay any fees or expenses to any attorney, accountant, consultant, advisor, broker, manager, or other professional governed by 11 U.S.C. §§ 328 through 331 except upon further order of this Court after notice and opportunity for hearing to PMB and the U.S. Trustee.[2]

    b.    <u>Matters Reserved</u>. This Order does not authorize the use or retention by the Debtor or any professional of funds which PMB may claim to be Pre-Petition Collateral delivered pre-petition to any professional firm or deposited pre-petition into any professional firm's deposit account or trust account, and the Court makes no determination of the rights to possession thereof and/or liens thereon.

    5.    <u>Adequate Protection Payments</u>.

    a.    <u>Loan Payments and Fees</u>. PMB shall be entitled to payment of and shall be paid, at the contractual non-default rate and on the applicable payment dates, all payments specified under the Business Loan Agreement dated as January 28, 2009 between PMB and Colony and the related promissory note (as amended, restated, or otherwise modified, and together with any related documents, the "Loan Documents") to the extent of excess revenues after payment of approved expenses, the $2,000 reserve a month established for general repairs up to a total general reserve of $10,000 aggregate at which point no further reserve shall be accrued, and the

---

[2] The prohibition of paying the Debtor's professionals, absent court approval of retention and payment, is applicable whether or not a line item is listed under any budget. For the avoidance of doubt, PMB has not consented to the payment of compensation to any professional, including any professional that may be listed in any budget, and expressly reserves all rights regarding any proposed payments to any such professionals.

reserves established for property taxes, but in no amount less than $20,000 per month.[3] In addition, PMB shall be entitled to accrue all fees, charges, or costs including out-of-pocket costs and expenses incurred by PMB as provided in the Loan Documents (including, without limitation, the fees and/or disbursements of counsel and any financial consultant advising it) in connection with the enforcement and protection of its rights and interests to the extent provided by the Loan Documents. PMB reserves all rights to assert claims for interest at the default rate. During the pendency of this case, PMB shall apply adequate protection payments toward principal and interest as if the indebtedness to it was not in default.

  b. <u>Reservation of Rights</u>. Nothing in this Order shall prejudice the right of PMB, the Debtor, or any party in interest concerning the validity, priority, extent, or allowance of PMB's claims, liens, collateral valuation, or the application of monies to principal, interest or fees claimed by PMB.

  6. <u>Grant of Liens for Adequate Protection</u>.

  a. <u>Pre-Petition Collateral</u>. "Pre-Petition Collateral" means all of (i) the Debtor's interest in any property which is granted to PMB under the agreements and documents executed by the Debtor pre-petition, to the extent that the Debtor's interest therein was acquired by the Debtor prior to the Petition Date, and (ii) as to which PMB's liens and security interests are perfected, valid, and not avoidable, and (iii) the proceeds, products, rents, rents, fees, charges, accounts, payments for use or occupancy or profits thereof acquired after the Petition Date, to the extent consistent with 11 U.S.C. § 552(b).

  b. <u>Preservation of Lien on Pre-Petition Collateral</u>. To the extent PMB's claims are allowed, perfected, not avoidable, and secured under 11 U.S.C. § 506(a) by Pre-Petition

---

[3] This Order is not intended to, and shall not, modify section 362(d)(3) of the Bankruptcy Code (or any other duties or obligations of a single asset real estate debtor under the Bankruptcy Code) or PMB's rights, or Colony's obligations, thereunder.

Collateral, PMB shall remain entitled to the priority of its lien and security interest in the Pre-Petition Collateral.

c. <u>Post-Petition Collateral</u>. "Post-Petition Collateral" shall mean the Debtor's interest in property which (i) first arises, is purchased, or acquired, after the Petition Date, and (ii) is not PMB's Pre-Petition Collateral or the proceeds, products, rents or profits thereof under 11 U.S.C. § 552(b).

d. <u>Grant of Lien as Adequate Protection</u>. To secure the Debtor's Adequate Protection Obligations under this Order and under Bankruptcy Code §§ 361(2), 362(d), and 363(e), PMB is hereby granted a lien upon all of the Pre-Petition Collateral, all of the Post-Petition Collateral, in the same order of priority which existed pre-petition.

    i. The grant of such lien is subject to the reservations of rights set forth in Paragraph 12 hereof, the exclusions of Paragraph 6(e), and the Carve Out Expenses in Paragraph 6(f) hereof; and

    ii. The PMB's lien on Post-Petition Collateral shall have the priority of 11 U.S.C. §364(c)(2) and (c)(3).

e. <u>Exclusions</u>. PMB's Post-Petition Collateral excludes: (i) any claim for relief arising under Bankruptcy Code § 506(c), (ii) all causes of action and bankruptcy avoidance powers enumerated in Chapter 5 of title 11, (iii) any commercial tort claims (to the extent not subject to PMB's pre-petition liens), and (iv) any proceeds thereof.

f. <u>Carve Out Expenses</u>. The lien on Post-Petition Collateral is subordinated to the following "Carve Out Expenses:"

    i. fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); and

ii. Any fees to professionals paid out in accordance with the approved budget, retention order and order on fee application, solely to the extent both authorized under any Budget and approved by the Court after notice and hearing.[4]

g. Reporting Requirements

i. Reporting Requirements – Accounting. The Debtor will provide an accounting to PMB once every month through its monthly operating reports of the Debtor's cash position; and

ii. Semi-Monthly Cash Reports. The Debtor will provide PMB semi-monthly cash flow reports, detailing the Debtor's actual receipts and disbursements for each reporting period. The Debtor will provide PMB the semi-monthly cash flow report no later than 5 business days after the 15th and last day of each month.

h. No Cross-Collateralization. Nothing in this Order shall be deemed to grant to PMB a lien on Post-Petition Collateral for the purpose of securing indebtedness to PMB which first arose before the Petition Date, except the Debtor's Adequate Protection Obligations.

i. Perfection of Security Interests. All liens granted or to be granted to PMB on the Post-Petition Collateral are deemed perfected and no further notice, filing, recording, control agreement, bailment arrangement, or order shall be required to effect such perfection under other State or Federal law. This Order shall be deemed sufficient and conclusive evidence of the Liens granted hereunder. PMB is authorized to file or record copies of this Order as financing statements and deeds of trust. Such copies may be filed in any county or jurisdiction, and any

---

[4] For the avoidance of doubt, the current Budget does not include any line item for professionals fees.

recording officer is authorized to record such copies. If PMB shall, in PMB's sole discretion, choose to file financing statements, deeds of trust, or other documents or otherwise confirm perfection of such Liens, the automatic stay is hereby modified to permit PMB to effect such filings and recordations, and all such financing statements, deeds of trust, or similar documents shall bee deemed to have been filed or recorded on the date of the entry of this Order.

j. No Consent to Surcharge. Except for the Carve-Out Expenses, nothing contained in this Order shall be deemed a consent by PMB to any lien, charge, assessment or claim against the Pre-Petition Collateral under 11 U.S.C. § 506 of the Bankruptcy Code, or otherwise.

7. Grant of Priority Claim to PMB.

a. Priority Claim. In addition to being secured as provided herein, if, notwithstanding the provisions of this Order, PMB has an allowable claim for the Adequate Protection Obligations, it shall constitute an expense of administration and shall have the priority of a claim under § 507(b).

8. Bankruptcy Trustee and Carve Out. The priority of the Debtor's Adequate Protection Obligations to PMB as described herein shall continue notwithstanding the appointment of a chapter 11 Trustee or (subject to 11 U.S.C. §§ 726 and 507(b) or other applicable law), the conversion of this case to a case under Chapter 7 of the Bankruptcy Code; provided that any priority claim allowable to PMB under this Order is subordinated to the Carve Out Expenses described in Paragraph 6(f) hereof.

9. Termination.

a. Termination Date. The Debtor's right to continue use of PMB's Pre-Petition Collateral or Post-Petition Collateral shall terminate upon the first to occur of the following dates (the "Termination Date") (i) upon 5 days notice, PMB notifies the Debtor that the Debtor has

violated any term or condition of this Order; (ii) the effective date of any confirmed Chapter 11 Plan in this case, or the conversion of this case to a case under Chapter 7 of the Bankruptcy Code, dismissal of this case, or the appointment of a trustee or an examiner in this case (unless such appointment is approved by the PMB); (iii) the filing by the Debtor of any pleading seeking to invoke the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Pre-Petition Collateral or otherwise; (iv) the filing by the Debtor of any pleading seeking to invoke the doctrine of equitable subordination under § 510 of the Bankruptcy Code against any prepetition claims or liens of PMB; (v) the Debtor or any other party in interest commences an adversary proceeding or contested matter to avoid or challenge the validity, priority, amount or allowance of PMB's claim or its lien on property of the estate, unless PMB consents to the continued use of Pre-Petition Collateral and Post-Petition Collateral notwithstanding such adversary proceeding or contested matter; (vi) a material change to the Debtor's operations; (vii) this Order is terminated or modified by order of this Court; (viii) the expiration of the Budget; or (ix) the Debtor shall seek approval to modify or amend or otherwise modify or amend the Budget without the consent of PMB, except as expressly permitted under Paragraph 1.a. of this Order. Notwithstanding the occurrence of an event of default referenced in this paragraph, PMB may elect in writing not to terminate the Debtor's authority to continued use of Cash Collateral, to waive defaults hereunder, to forebear from exercise of rights and remedies hereunder and under the Loan Documents, and subject to Court approval, to modify the events of default described herein. Any such continued extension of financial accommodations shall be without prejudice to PMB's ability to terminate funding and shall constitute a course of dealing obligating PMB to make financial accommodations at any time in the future. Upon the Termination Date, the Debtor's authority to use Cash Collateral (except pay to Carve Out Expenses incurred prior to

such time) shall terminate upon 7 business days and PMB shall have the right to have any request for relief from the automatic stay heard at an expedited final hearing (pursuant to sections 362(d) and 362(e) of the Bankruptcy Code) as soon thereafter as the Court's schedule permits..

  b. <u>Remedies for PMB</u>.  Upon (i) the Termination Date, or (ii) PMB's reasonably concluding that it is not adequately protected or that the Debtor is suffering continued losses, PMB may notify the Debtor and the U.S. Trustee that PMB is objecting to use of cash collateral. Upon sending of such notice by facsimile, PMB may file an emergency motion for adequate protection or for relief from the automatic stay or other relief, and may set such motion for expedited hearing (subject to the Court's calendar) upon not less than five (5) business days notice to the Debtor and the U.S. Trustee.  Nothing herein shall prohibit PMB from seeking to terminate the automatic stay, voting against any plan of reorganization of the Debtor, or seeking other appropriate relief which it, in its sole and absolute discretion, may wish to pursue.

  c. <u>Debtor's Motion</u>.  To the extent PMB objects to use of cash collateral, the Debtor shall have the right to move this Court notwithstanding PMB's objections, for an order pursuant to Bankruptcy Code § 363(c)(2)(B) authorizing the continued use of cash collateral, and the Debtor's motion may be set for expedited hearing (subject to the Court's calendar), upon not less than two (2) days notice to PMB and the U.S. Trustee.

  10. <u>Successors and Assigns</u>.  The provisions of this Order shall be binding upon the Debtor, PMB and their respective successors and assigns, including any trustee or representative of the estate hereafter appointed or elected in this Chapter 11 case or in any subsequent Chapter 7 case.

11. <u>Continuing Effect</u>. If all or any of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, or on appeal, such stay, modification, or vacation shall not affect (i) the validity or priority of any obligations owed to PMB by the Debtor incurred prior thereto, or (ii) the validity, enforceability, or priority of any lien or priority of PMB with respect to the Debtor's Adequate Protection Obligations. Any Adequate Protection Obligations of the Debtor arising prior to the effective date of such stay, modification, or vacation, shall be governed by the original provisions of this Order.

12. <u>Service of Pleadings</u>. The Debtor shall serve a copy of all pleadings or reports, including monthly operating reports, heretofore or hereafter filed with the Court concurrently with the filing by the Debtor, on the U.S. Trustee and PMB.

13. <u>Reservation of Rights</u>. The Debtor, PMB, and all parties in interest shall be deemed to reserve their respective rights and remedies under pre-petition agreements, and other applicable law. Nothing in this Order shall be deemed to prejudice, waive, or release the rights and remedies of the Debtor, or any party in interest arising under the Bankruptcy Code or other applicable law, including any avoidance actions and defenses thereto. Any adequate protection payments, priorities, liens, or other matters provided for under this Order shall not constitute an admission or determination that PMB is oversecured or undersecured.

14. <u>Waiver of the fourteen (14) day stay under Bankruptcy Rule 6004(h)</u>. The fourteen (14) day stay provisions of Bankruptcy Rule 6004(h) are waived and shall not apply to this Order.

15. <u>Retention of Jurisdiction</u>. This Court has and shall retain jurisdiction to enforce this Order according to its respective terms.

### #

Agreed to as to form:

Patricia B. Tomasco
State Bar No. 01797600
MUNSCH HARDT KOPF & HARR, P.C.
401 Congress Avenue, Suite 3050
Austin, Texas 78701
Telephone: (512) 391-6100
Facsimile: (512) 391-6149
Email: ptomasco@munsch.com

ATTORNEYS FOR PACIFIC MERCANTILE BANCORP

Michael A. McConnell
Texas Bar I. D. 13447300
Clay M. Taylor
Texas Bar I. D. 24033261
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: 817-332-2500
Facsimile: 817-878-9280
Email: clay.taylor@kellyhart.com

ATTORNEYS FOR COLONY LODGING, INC.

# COLONY LODGING INC
# MONTHLY BUDGET
# OCT 2010

|  | Oct 2010 |
|---|---|
| **INCOME** | |
| Net cash inflow-ACTUAL | 0.00 |
| Net cash inflow-PROJECTED | 92,486.62 |
| Total Income | 92,486.62 |
| | |
| **EXPENSES** | |
| | |
| Reserve for Real Estate Taxes | (8,000.00) |
| Reserve for Texas Comptroller | (1,000.00) |
| Property Insurance | (4,400.00) |
| Liability Insurance | 0.00 |
| Workers comp insur.(ESTIMATE ONLY) | (1,200.00) |
| | |
| Payroll Salaries(Net) | (9,500.00) |
| Onsite manager (monthly gross $3300) | |
| Leasing (monthly gross $3300) | |
| Maintenance (monthly gross $4700) | |
| Taxes-Withheld | (1,800.00) |
| Child Support Withheld | (1,200.00) |
| Employer Taxes | (1,000.00) |
| Payroll processing fees | |
| | |
| Lawn care | (50.00) |
| Carpet Cleaning | (500.00) |
| Tub Resurfacing | (300.00) |
| Plumbing Supplies | (150.00) |
| HVAC Supplies | (150.00) |
| Misc. R & M and Maint Supplies | (1,200.00) |
| Reserve for other general repairs | (2,000.00) |
| Painting | (300.00) |
| | |
| Office Supplies | (400.00) |
| Bank Charges | (100.00) |
| | |
| Utilities: | |
| Gas | (150.00) |
| Suddenlink | (13,000.00) |
| College Station Utilities | (8,000.00) |
| Phones | |
| Dues/Licenses/Memberships | (200.00) |
| | |
| Miscell to reconcile | |
| Software/Computer Costs | (600.00) |
| | |
| Pest Control | (275.00) |
| | |
| Eviction/lock-out costs | (1,000.00) |
| | |
| BCSK Fee(8.5%) | (7,862.00) |
| | |
| CPA Fees | (2,500.00) |
| | |
| Trustee Fees | (4,875.00) |
| | |
| Total Expenses | (71,712.00) |

# COLONY LODGING INC
# MONTHLY BUDGET
# NOV 2010

|  | Nov 2010 |
|---|---|
| INCOME | |
| Net cash inflow-ACTUAL | 0.00 |
| Net cash inflow-PROJECTED | 92,486.62 |
| Total Income | 92,486.62 |
| | |
| EXPENSES | |
| | |
| Reserve for Real Estate Taxes | (4,000.00) |
| Reserve for Texas Comptroller | (1,000.00) |
| Property Insurance | (4,400.00) |
| Liability Insurance | 0.00 |
| Workers comp insur.(ESTIMATE ONLY) | (1,200.00) |
| | |
| Payroll Salaries(Net) | (9,500.00) |
| Onsite manager (monthly gross $3300) | |
| Leasing (monthly gross $3300) | |
| Maintenance (monthly gross $4700) | |
| Taxes-Withheld | (1,800.00) |
| Child Support Withheld | (1,200.00) |
| Employer Taxes | (1,000.00) |
| Payroll processing fees | |
| | |
| Lawn care | (50.00) |
| Carpet Cleaning | (500.00) |
| Tub Resurfacing | |
| Plumbing Supplies | (150.00) |
| HVAC Supplies | (150.00) |
| Misc. R & M and Maint Supplies | (1,200.00) |
| Reserve for other general repairs | (2,000.00) |
| Painting | (300.00) |
| | |
| Office Supplies | (400.00) |
| Bank Charges | (100.00) |
| | |
| Utilities: | |
| Gas | (150.00) |
| Suddenlink | (11,000.00) |
| College Station Utilities | (8,000.00) |
| Phones | |
| Dues/Licenses/Memberships | (200.00) |
| | |
| Miscell to reconcile | |
| Software/Computer Costs | (600.00) |
| | |
| Pest Control | (275.00) |
| | |
| Eviction/lock-out costs | (1,000.00) |
| | |
| BCSK Fee(8.5%) | (7,862.00) |
| | |
| CPA Fees | (3,000.00) |
| | |
| Trustee Fees | |
| | |
| Total Expenses | (61,037.00) |

# CERTIFICATE OF NOTICE

```
District/off: 0542-6          User: hilliardj            Page 1 of 1              Date Rcvd: Oct 14, 2010
Case: 10-60909                Form ID: pdfintp           Total Noticed: 8

The following entities were noticed by first class mail on Oct 15, 2010.
db              Colony Lodging, Inc.,   1011 1/2 N. Beverly Drive,   Beverly Hills, CA  90210-2328
aty            +Kelly Hart,   Kelly Hart & Hallman LLP,   201 Main St, Ste 2500,   Ft Worth, TX 76102-3194
aty             Ronald E. Pearson,   2109 Bird Creek Terrace,   Temple, TX  76502-1083
intp           +Bonnie Fritts,   c/o Leonard M. Ross,   1011 1/2 N. Beverly Dr,   Beverly Hills, CA 90210-2328
cr             +County of Brazos,   c/o Lee Gordon,   P.O. Box 1269,   Round Rock, TX 78680-1269
intp           +Leonard Ross,   LM Ross Professional Law Corporation,   1011 1/2 North Beverly Drive,
                 Beverly Hills, CA 90210-2328
intp           +National Guardian Life Insurance Company,   c/o Greg Lowry,   2200 Ross Avenue Suite 2200,
                 Dallas, TX 75201-2748
cr             +Propel Financial Services,   c/o John Lane & Associates,   8526 N New Braunfels,
                 San Antonio, TX 78217-6304

The following entities were noticed by electronic transmission.
NONE.                                                                                        TOTAL: 0

             ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr              Pacific Mercantile Bancorp
                                                                                TOTALS: 1, * 0, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Oct 15, 2010**                    **Signature:**   *Joseph Speetjens*